**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:CV-09-0845** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **JEFFREY BEARD, <u>et</u> <u>al</u>.,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Dawn Marie Ball ("Ball") filed this civil rights action pursuant to 42 U.S.C.

§ 1983 while confined as an inmate at the State Correctional Institution at Muncy (SCI-Muncy),

Pennsylvania.  She has since been transferred to the State Correctional Institution at Cambridge

Springs (SCI-Cambridge Springs), Pennsylvania.  Named as Defendants are Jeffrey Beard,

former Secretary at the Pennsylvania Department of Corrections, and seven (7) SCI-Muncy

employees.[1]  In the complaint Ball alleges that Defendants violated her constitutional rights by

refusing to transfer her to another correctional institution after she began experiencing physical

and mental problems she attributes to her confinement in the Restricted Housing Unit ("RHU")

at SCI-Muncy for over two (2) years.  Presently pending before the Court is Defendants' motion

to dismiss the complaint.  (Doc. No. 20.)  The motion is ripe for consideration and, for the

reasons that follow, will be granted.

**I.      Background**

In the complaint Ball alleges that she was brought to the RHU at SCI-Muncy on April 10,

---

[1]  The SCI-Muncy Defendants are as follows: Superintendent Marirosa Lamas, Deputy
Superintendents Jill Shepler and Robert Smith, Superintendent's Assistant Troy Edwards,
Corrections Classification Program Manager Wendy Nicholas, Unit Manager William Frantz,
and Counselor Susan Hartman.

2007, and was still confined there at the time she filed this action.  According to Ball, she is scheduled to remain in the RHU until the year 2024.[2]  She claims that Defendants refuse to transfer her to another prison out of state, preferably New Jersey, where she can "thrive" and be closer to her family.  She states that since she has been housed in the RHU her physical and mental health have declined.  For example, she alleges that she "smells things that are not there," constantly scrubs her hands, is worried, stressed and disoriented, has lost about 100 pounds, has lost hair, and must deal with constant noise.  Ball further contends that she has lost interest in everything, and that she has not seen her family or been permitted to call her son in over two (2) years.  She claims that on April 8, 2009, Defendant Edwards "denied the courts to allow [her] contact visits and phone calls to [son]."  (Doc. No. 1, Compl. at 3.)  Ball claims she is suing Defendants Lamas and Beard because of "prison policies."  (Id.)  As relief she seeks monetary damages, a transfer to a prison in New Jersey, and visits/calls with her family.[3]

## II.     Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom,

---

[2]  In a letter dated September 19, 2009, Ball advised the Court that she has been transferred to SCI-Cambridge Springs.  (Doc. No. 33.)

[3]  Any request for injunctive relief is now moot based upon Ball's transfer to SCI-Cambridge Springs.  It is well established that where a plaintiff seeks injunctive relief against prison officials whose control he is no longer subject to or against a prison he is no longer housed in, there is no longer a live controversy and a court cannot grant that injunctive relief.  See Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993); Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998).

and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177

(3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the

court is generally limited in its review to the facts contained in the complaint, it "may also

consider matters of public record, orders, exhibits attached to the complaint and items appearing

in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.

2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.

1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice

of what the ... claim is and the grounds upon which it rests." Phillips v. County of Allegheny,

515 F.3d 224, 232 (3d Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See

Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the

claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, ___U.S.___, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009)(explaining that Rule 8 requires more than "an unadorned,

the defendant-unlawfully-harmed-me accusation."); Twombly, 550 U.S. at 555 (requiring

plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  Thus,

courts should not dismiss a complaint for failure to state a claim if it contains "enough factual

matter (taken as true) to suggest the required element.  This does not impose a probability

requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence of  the necessary element." Phillips, 515 F.3d at

234 (quoting Twombly, 550 U.S. at 556).  Under this liberal pleading standard, courts should

generally grant plaintiffs leave to amend their claims before dismissing a complaint that is

merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**III.    Discussion**

   **A.    Claims for Damages against Defendants in their Official Capacities**

   Defendants first move to dismiss all claims set forth against them in their official

capacities seeking monetary damages as barred by the Eleventh Amendment.  The Eleventh

Amendment to the United States Constitution prohibits actions for damages against a state in

federal court unless the state has waived its immunity.  U.S. Const. Amend. XI; Edelman v.

Jordan, 415 U.S. 651 (1974)("a suit by private parties seeking to impose a liability which must

be paid from public funds in the state treasury is barred by the Eleventh Amendment").  There is

no waiver of immunity applicable to this case.  Although § 1983 imposes liability upon "every

person" who deprives another of a constitutional right under color of state law, the Supreme

Court has ruled that "neither the State nor its officials acting in their official capacities are

'persons' under § 1983."  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Thus,

Defendants' request to dismiss all claims for damages against them in their official capacities

will be granted.

   **B.    Eighth Amendment Claims**

   To the extent that Ball seeks to state an Eighth Amendment claim, she fails to allege the

requisite personal involvement on the part of any of the Defendants.  In order to prevail in a

§ 1983 action, a plaintiff must establish two elements: (1) that the conduct complained of was

committed by a person acting under color of state law; and (2) that the conduct deprived a person

of rights, privileges or immunities secured by the Constitution or laws of the United States.

Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

Section 1983 liability cannot be predicated solely on respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Thus, individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement may be shown by either allegations of personal direction of or actual knowledge and acquiescence in the deprivation. Id. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208. Moreover, if an official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.3d at 1208; Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006).

In order to establish an Eighth Amendment claim, Ball must show that she has been deprived of "the minimal civilized measure of life's necessities." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997)(quoting Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992)). This includes showing that the conditions of confinement pose "a substantial risk of serious harm" to her health or safety. Farmer, 511 U.S. at 834. The duration of the exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are important considerations in addressing a claim of cruel and unusual treatment. "Some conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single,

identifiable human need such as food, warmth, or exercise - for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304-05 (1991)(citations omitted.)

In addition to showing conditions that pose a significant risk of serious harm, Ball must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Wilson, 501 U.S. at 298.  The standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety.  Farmer, 511 U.S. at 837.   It is enough that an official acted or failed to act despite his knowledge of a substantial risk of harm. Id. at 842.

To the extent that Ball is raising an Eighth Amendment claim regarding her confinement in disciplinary custody in the restricted housing unit, the Pennsylvania courts unanimously have found that confinement in restrictive housing conditions, without more, does not violate the Eighth Amendment.  See Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997)(holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); Fortson v. Kelchner, No. 08-0532, 2009 WL 693247, at *3 (W.D. Pa. Mar. 13, 2009)(granting Defendants' motion to dismiss as to Plaintiff's Eighth Amendment claim regarding confinement in the RHU and SMU).  Ball claims, however, that being confined in a segregated housing unit for over two (2) years caused her mental and physical health to decline, and cites to hair and weight loss, stress, phobias, lack of interest in life, racing thoughts, various mental disorders and a host of other problems.

In applying the above principles to Ball's complaint, it is first evident that she fails to

allege personal involvement on the part Defendants Beard and Lamas.  Ball only seeks to impose

liability upon these Defendants due to their supervisory roles with respect to the policies within

the prison system.  With respect to Defendants Shepler, Nicholas, Smith, Hartman and Frantz,

Ball only lists their names in the caption of the complaint and fails to reference them at all within

the body of the complaint.  As such, she clearly fails to allege the personal involvement

necessary to state a claim under § 1983 with respect to these Defendants.  There are no

allegations whatsoever that Defendants had any involvement or played any role with respect to

any of the physical or mental conditions Ball suffered.  There are no allegations that she ever

requested help or treatment from any of these Defendants with respect to any of the problems she

claims to have experienced and was denied assistance.  If provided the opportunity to amend,

however, it is possible that Ball may be able to set forth allegations that one or more of the

Defendants were aware of the conditions alleged, and that having become aware, were

deliberately indifferent to them.  For these reasons, and without passing any judgment as to the

ultimate success of any Eighth Amendment claim, Ball will be afforded the opportunity to

submit an amended complaint in this action associating her Eighth Amendment claims with a

specific Defendant or Defendants.

### C.      Due Process Claims

Ball first suggests that her due process rights have been violated because Defendants

refused to transfer her to another correctional facility.  It appears that she would rather be housed

in a prison in New Jersey, closer to her home and family.  It is well-established that inmates do

not have a constitutional right to be incarcerated in any particular prison.  Olim v. Wakinekona,

461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 214, 225 (1976).  As such, any such

claim is subject to dismissal.

In addition, Defendants argue that any due process claim raised by Ball with regarding the length of her confinement in the RHU is also subject to dismissal. Because Ball's due process rights were never triggered, the Court agrees that the due process claims are subject to dismissal.

Ball claims she was placed in the RHU in April of 2007, and was still confined there when she filed this action on May 5, 2009. The Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum. 427 U.S. at 224. Only liberty interests are protected from arbitrary or capricious deprivation. Hewitt v. Helms, 459 U.S. 460 (1983). As such, the initial inquiry presented by an inmate's due process claim is whether Defendants' actions impacted a constitutionally-protected liberty interest. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). If so, the question then becomes what process is due to protect the interest.

In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483. At issue in Sandin was whether the plaintiff's thirty-day detention in disciplinary custody in a Hawaii prison impacted any liberty interest protected under the Fourteenth Amendment. The Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his

thirty (30) day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence.  In finding that the prisoner's thirty (30) day disciplinary confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Supreme Court focused on the short duration of the segregation, the similarity between the conditions of confinement in disciplinary segregation and the conditions imposed upon other inmates, and the lack of any direct collateral consequences affecting the overall length of the prisoner's underlying sentence.  The focus is on the duration of the confinement and the conditions of that confinement in relation to other prison conditions. See Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003).

In applying this analysis, courts have found that placement in restrictive confinement for periods of one year and more do not implicate a constitutionally protected liberty interest on the basis that such duration does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.  See Griffin, 112 F.3d at 707 (finding it is not atypical to be exposed to conditions of administrative custody for a period of 15 months in that such stays are within the expected parameters of an inmate's sentence); Young v. Beard, 227 F. App'x 138, (3d Cir. 2007)(finding that a 930 day sentence to disciplinary confinement where no atypical conditions were alleged failed to show a deprivation of a cognizable liberty interest); Torrealba v. Hogsten, No. 3:06-0108, 2009 WL 3242293, at *9-10 (M.D. Pa. Oct. 8, 2009).

The conditions complained of by Ball in restrictive custody including noise, infrequent showers and symptoms of mental stress and anxiety are reasonable and proportionate to those conditions complained about by inmates in other prisons, and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life.  While Ball also

complains about the lack of visits and phone calls to family members, these losses also fail to rise to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life.  The Court looks to what an inmate would reasonably expect to encounter when determining what is atypical and significant.  The loss of phone or visitation privileges during imprisonment is surely something an inmate would expect to encounter.  See Torrealba, 2009 WL 3242293, at *10 (holding that the loss of telephone and visitation privileges during two years of segregated confinement was not significant and atypical.)[4]  Using restrictions to promote social behavior falls within the parameters of a sentence imposed by a court of law.  While there is little doubt that Ball would prefer not to be confined in restrictive housing, and in fact expresses her desire to be housed in the general population of a prison in New Jersey closer to her home, her preference is not a liberty interest protected by the Due Process Clause.   For these reasons, her due process claims will be dismissed.

Based on the foregoing, the Defendants' motion to dismiss will be granted.  However, Ball will be afforded the opportunity to submit an amended complaint within twenty (20) days strictly limited to setting forth an Eighth Amendment claim in accordance with this Memorandum.  The amended complaint must be a self-contained document, and should not refer back to the original complaint.  Any new claims Ball attempts to raise will be stricken.  An

---

[4]  The Court further notes that in reviewing Ball's complaint, it is not even clear that Ball has been denied family visits during her confinement in the RHU.  At one point she states that her mother lives three (3) hours away from the prison and works during the week.  Because she is the only "breadwinner," her mother is unable to miss work and come to visit during the week.  Ball further remarks that "they" will not allow her mother to bring her child to visit on the weekends.  (Doc. No. 1, Compl. at 3.)  These comments suggest that Ball is actually permitted visitors, but that factors unrelated to Defendants prevent her mother and son from visiting at certain times.

appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:CV-09-0845** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **JEFFREY BEARD, et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW, THEREFORE, THIS 31ˢᵗ DAY OF MARCH, 2011,** in accordance with

the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.  Defendants' Motion to Dismiss (Doc. No. 20) is **granted without prejudice** to
    Plaintiff to submit an amended complaint consistent with the attached
    Memorandum within twenty (20) days.  The Clerk of Court is directed to provide
    to Plaintiff two (2) blank 42 U.S.C. § 1983 civil rights forms for her use in
    preparing an amended complaint.

2.  Failure to submit a proper amended complaint in this action will result in the
    dismissal of the Eighth Amendment claim, and the case will be closed.


 S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania