## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN BALL, | : | Civil No. 1:09-CV-845 |
| | : | |
| Plaintiff, | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| JEFFERY BEARD, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case.

#### A.   Introduction

This case illustrates the extraordinary challenges that arise in the context of caring for inmates who are both mentally ill, and highly litigious.

The plaintiff, Dawn Ball, is one such inmate.  Ball, an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, by her own account suffers from a cascading array of severe mental illnesses, and candidly acknowledges that she is profoundly disturbed, informing the Court that:

> My mental health is declining. I suffer from OCD so bad I scrub my hands till they bleed, confusion, PTSD, disassociative disorder, I smell, see and hear things not there, severely stressed, phobias, agoraphobia, severe anxiety, lack of interest in things, lack of arousal in thing, racing thoughts, suicidal, cognitive problems and disorders, lack of interest in life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic depressive, mood swings that are so severe, can't think clearly....

(Doc. 42, pp.6-7.)

This sad stark truth, that Dawn Ball is by her own admission a deeply troubled person, is then bounded by another simple reality. While she suffers from paranoia, schizophrenia, and experiences visual and auditory hallucinations, Ball has been a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison. Indeed, at present Ball has a total of sixteen lawsuits pending before this court.[1] Ball has also been a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief could be granted. See, e.g., Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.); Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.); Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.); Ball v. Butts, No. 11-2862, 2011 WL 4375782, 1 (3d Cir. Sept. 21, 2011).

---

[1] See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden, No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.).

### B.    Ball's Current Lawsuit

It is against this backdrop that Ball instituted the current lawsuit.  Ball's *pro se* civil rights complaint was initially filed on May 5, 2009. (Doc. 1)  On March 31, 2011, the district court ordered this complaint dismissed without prejudice, after observing that the complaint was flawed in a number of fundamental respects. (Doc. 36)  Ball then filed an amended complaint on May 17, 2011, (Doc. 42), which is the subject of the instant motion to dismiss. (Doc. 46)

The amended complaint recites that Ball was housed in the Restricted Housing Unit at the State Correctional Institution (SCI)  Muncy since April, 2007. ( Doc. 42) According to Ball, at various undisclosed times RHU staff physically and sexually assaulted her, verbally abused her, and unlawfully confiscated her property, while medical staff refused her requests for care and treatment for her injuries. (Id.)

According to Ball "I am <u>not</u> thriving in RHU." (<u>Id</u>., emphasis in original.) Yet, while she has not thrived in this particular custodial environment, Ball apparently has not been able to comply with institutional rules , avoid prison infractions, and depart the RHU based upon her good behavior.  In fact, Ball's pleadings acknowledge that she has only sporadically been able to comply with prison rules, even as she complains that prison officials refuse to reward her uneven institutional conduct with a favorable

transfer.  As Ball explained in her amended complaint,"they refuse to cut any RHU time even though, at times, I gave a few months misconduct free." (Id., at p.5)

While the complaint details various acts allegedly undertaken by the RHU and medical staff who Ball claims directly  participated in episodes of neglect and abuse, the complaint does not name these officials as defendants in this case.[2]  Instead, Ball names eight supervisory officials as defendants, including Department of Corrections Secretary Jeffrey Beard and the following SCI-Muncy employees:  Superintendent Marirosa Lamas, Deputy Superintendent Jill Shepler, Deputy Superintendent Robert Smith, Superintendent's Assistant Troy Edwards, Corrections Classification Program Manager Wendy Nicholas, Unit Manager William Frantz, and Counselor Susan Hartman. (Id.)

With respect to these supervisory personnel named in the amended complaint Ball then advances a novel theory of culpability.  Ball's amended complaint does not

---

[2]Of course we note that these officers who are alleged to have directly harmed Ball are named as defendants in numerous other pending matters filed by the plaintiff. See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.).

present well-pleaded facts which allege that any of these supervisory officials committed abusive acts against her, directed these acts, expressly approved these acts in advance of these alleged assaults and mistreatment, or even witnessed these acts. Instead, the gravamen of Ball's complaint seems to be that the officials received reports of these events after-the-fact from Ball but failed to act upon those reports, and have declined to either release Ball from the RHU, or transfer her to New Jersey to serve her sentence. (Id.) Thus, while Ball frames her complaints in a variety of ways, alleging that the defendants are liable because they "ignored" her complaints, "failed to help", "failed to rectify a wrong, and did nothing to help me" and "refused to put in for [a prison transfer] and refused to help me," (id., pp.5-6), all of Ball's claims share a common theme of liability based upon supervisory status without allegations or proof of direct involvement in the underlying acts which Ball alleges caused her harm.

The supervisory correctional defendants have now filed a motion to dismiss Ball's complaint, (Docs. 46), alleging that Ball has failed to failed to state a claim upon which relief can be granted. This motion has been fully briefed by the parties, (Docs. 48 and 50), and is now ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss be granted.

## II.   Discussion

### A.   Rule 12(b)(6)– The Legal Standard.

The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

Indeed, this Court has a specific statutory obligation to conduct a preliminary review of *pro se* prisoner complaints which seek redress against government officials.  Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be  granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel,</u>

Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).   Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).   As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."   Id. at 555.   "Factual allegations must be enough to raise a right to relief above the speculative level."   Id.   In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.   In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."   Id. at 1950.   According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Id. at 1949.   Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the

pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that the claims in this complaint are subject to dismissal, as discussed separately below:

**B.      Ball's Complaint Fails to State A Claim Upon Which Relief Can Be Granted**.

**1.      The Prison Supervisors May Not Be Held Liable Solely By Virtue of Their Supervisory Status**

Ball's amended complaint names eight prison supervisors as defendants, but does not allege well-pleaded facts which show that these officials personally directed or approved specific allegedly harmful actions by either medical personnel or RHU staff. Instead, the apparent articulated rationale for inclusion of these defendants in this lawsuit is Ball's allegation that they were informed of these episodes at some point in time after the incidents but did not act upon these reports to the plaintiff's satisfaction by either removing her from the RHU program, or transferring her to New Jersey, as she requested. Ball complains about this supervisory inaction even though she acknowledge that she has only sporadically been able to comply with prison rules. As Ball explained in her amended complaint, "they refuse to cut any RHU time even

though, at times, I gave a few months misconduct free." (Id., at p.5.)   Thus, the plaintiff's complaint as to these defendants is premised on their supervisory status, and their alleged failure to respond to her complaints, and nothing more.

To the extent that Ball premises her complaint upon the supervisory status of these defendants, this is a fatal flaw in this pleading since it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.   Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.   Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).   Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.   Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and

acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)."

Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006).

These principles apply with particular force to claims of supervisory liability

leveled against prison supervisors involving allegations arising from their

subordinates' care and treatment of erratic, and mentally ill offenders like Ball.

Recognizing the profound challenges that psychologically disturbed inmates create in

an institutional setting courts have been reluctant to extend supervisory liability to

prison officials for the actions of their subordinates in trying to meet the needs of

mentally ill inmates. Ziemba v. Armstrong, 430 F.3d 623 (2d Cir. 2005)(dismissing

supervisory liability claim); Thornton v. City of Montgomery, 78 F. Supp. 2d 1218

(M.D. Ala. 1999)(same).

Here, we recognize that Ball attempts to disclaim any *respondeat superior*

theory of liability and insists instead, in a conclusory fashion, that all of these officials

had actual knowledge of these events and acquiesced in these alleged assaults.  This

bare assertion, however, cannot save Ball's complaint as to these defendants for at

least two reasons.  First, the well-pleaded facts in the amended complaint do not allege

contemporaneous approval of, or  acquiescence in, this conduct.  Rather, those facts

only recite a failure of supervisors to respond after-the-fact to Ball's various

complaints and requests for transfers.  More fundamentally, Ball's assertion that

supervisors acquiesced in these actions is presented in a wholly inadequate manner,

in the form of "labels and conclusions, and a formulaic recitation of the elements of a cause of actions [which] will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Therefore we find that the well-pleaded facts in Ball's amended complaint largely premise this supervisory liability on concepts of *respondeat superior*, and therefore fail to state a claim upon which relief can be granted.

## 2. Ball May Not Hold Supervisors Liable for Their Alleged Failure to Favorably Consider Her Complaints

As we have noted, Ball's amended complaint does not allege that these supervisors directed the conduct of staff, or had advance knowledge of that conduct and expressly approved it. Rather, Ball names these defendants solely because she alleges that they failed to fully investigate and favorably act upon her various complaints after-the-fact. However, these allegations, standing alone, do not provide a basis for supervisory civil liability. Quite the contrary, it is well-settled that inmates cannot sustain claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").

Consequently, dissatisfaction with response to an inmate's grievances or complaints

does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

> Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

This principle applies with particular force to Ball's complaints that prison supervisors failed to adequately follow up on her medical complaints. Ball faces an exacting burden in advancing this Eighth Amendment claim against prison officials

in their individual capacities.  To sustain a claim against prison medical providers Ball

must first must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be,
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825,
> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and
> citations omitted). In prison conditions cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety." <u>Id.</u> "Deliberate
> indifference" is a subjective standard under Farmer-the prison official-
> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

<u>Beers-Capitol v. Whetzel,</u>256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the

courts have held that a mere generalized knowledge that prisons are dangerous places

does not give rise to an Eighth Amendment claim. <u>See</u> <u>Jones v. Beard</u>, 145 F. App'x

743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff

complained about cellmate who had a history of psychological problems, but where

plaintiff failed to articulate a specific threat of harm during the weeks prior to an

attack.)  In short, when "analyzing deliberate indifference, a court must determine

whether the prison official 'acted or failed to act despite his knowledge of a substantial

risk of serious harm.' <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994).  A prisoner

plaintiff must prove that the prison official 'knows of and disregards an excessive risk

to inmate health or safety.' <u>Id</u>. at 837." <u>Garvey v. Martinez</u>, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976).  To establish a violation of this constitutional right to adequate medical care in accordance with this standard, a plaintiff is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

There is a necessary corollary to this principle, limiting the reach of the Eighth Amendment in a prison medical setting.  In a case such as this, where the plaintiff's complaint reflects that an inmate received some level of on-going medical care, it is also well-established that non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993).  The rationale for this rule has been aptly

explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007). This rule applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing an inmate grievance

concerning medical issues.  Where non-medical corrections staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Garvey v. Martinez,  2010 WL 569852, 7 (M.D.Pa. Feb. 11, 2010)(citations omitted); see Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006).

Thus, in this case, fairly construed, Ball's claims against the supervisory prison defendants named in this amended complaint consist of little more than assertions of *respondeat superior* liability, coupled with apparent but unarticulated dissatisfaction with their processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim.  Therefore these defendants are entitled to be dismissed from this case.

### 3.    Ball Is Not Legally Entitled To a Prison Transfer

Ball's amended complaint is flawed in yet another respect.  The gist of her claims against these defendants is that they violated her rights by failing to honor her requests for a prison transfer or removal from the RHU, a claim which Ball advanced even though she acknowledged that even she was only sporadically compliant with prison rules.  As Ball explained in her amended complaint,"they refuse to cut any RHU time even though, at times, I gave a few months misconduct free." (Id., at p.5.)

To the extent that Ball premises her claim for relief on an entitlement to a transfer, this claim fails as a matter of law.  Quite the contrary, it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976).  Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id.  Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985).  Thus, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta).  In sum, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any  security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5th Cir.

1995); <u>Marchesani v. McCune</u>, 531 F.2d 459 (10th Cir.), <u>cert.denied</u>, 429 U.S. 846 (1976). Simply put, as a legal matter Ball has no constitutional right to choose her prison.

Nor can Ball premise this claim upon an assertion that she was entitled to leave the RHU despite her own admitted failure to comply with RHU rules over time. This assertion also misconstrues the controlling legal standards governing inmate disciplinary housing claims. Those controlling legal tenets were recently summarized in the following terms:

> In <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) the Supreme Court dramatically narrowed the range of liberty interests created by law and regulation. Prior to *Sandin,* courts reviewed the specific language of the pertinent law or regulation to determine whether the language was unmistakably mandatory in character such that it created a liberty interest. The Supreme Court announced a new rule in <u>Sandin</u> for determining whether a prisoner had a protected liberty interest created under statute or regulation by shifting the focus of inquiry from the specific language of the law or regulation to whether the deprivation suffered by the prisoner imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 483 (emphasis added). [Following <u>Sandin</u>] [e]very court that has addressed this issue in Pennsylvania has determined that prisoners do not have a liberty interest in remaining free from confinement in the SMU or similar housing. <u>See, e.g.,</u> <u>Smith v. Dodrill</u>, 2009 WL 62175 (M.D. Pa. Jan 8, 2009); <u>Spencer v. Kelchner</u>, 2007 WL 88084 (M.D.Pa. Jan.9, 2007); <u>Dantzler v. Beard</u> 2007 WL 5018184 (W.D.Pa. Dec.6, 2007); <u>Francis v. Dodrill</u>, 2005 WL 2216582 (M.D.Pa. Sept.12, 2005). <u>Cf. Johnson v. Hill</u>, 910 F.Supp. 218, 220 (E.D.Pa.1996) (holding that, absent a state-created liberty interest that does not exist in Pennsylvania,

prisoner placement is a matter of prison administration and a prisoner has no constitutional right to be placed in any particular cell or housing unit).

Brown v. Beard, No. 07-637,  2011 WL 1085890, *20 (W.D.Pa. March 21, 2011)

In sum, since Ball manifestly did not have a constitutional right to leave the RHU, particularly in light of what she describes as a poor compliance history in that prison unit, she cannot base a constitutional claim against these defendants upon their alleged failure to give her a benefit which she was not entitled to receive–a transfer to the prison of her choosing.

> 4.     **Ball has Not Alleged Facts Which Would Permit Liability on a Failure-to-Intervene Theory**

Neither can Ball sustain this complaint on an Eighth Amendment failure to intervene theory.  At the outset, Ball has not pleaded such a claim, despite being given the opportunity to amend her complaint.  Moreover, the well-pleaded facts in this amended complaint would not support such a claim.  The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. See U.S. Const. amend. VIII.  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828-29.  Therefore a prison official has a duty to protect inmates from serious risks of harm of which the prison official is aware.  Id. at 833. However, in order to constitute "deliberate indifference" under the Eighth Amendment, the prison official who is alleged to have failed to protect an inmate must

have had subjective knowledge of the risk of serious harm, and he must nevertheless have failed to respond reasonably to the known risk.  Id. at 837-38.

Thus, proof of a culpable subjective intent is a critical component of an Eighth Amendment claim.  The leading case in the Third Circuit addressing deliberate indifference in this prison context is found in Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001).  In Beers-Capitol, the Third Circuit explained the basic requirements of a claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety."  Id.  This deliberate indifference standard "is a subjective standard under Farmer – the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."  Id. Thus, " '[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety' " Hamilton v. Levy, 117 F.3d 742, 747 (3d Cir. 1997) (quotation marks omitted)(emphasis added).

While Eighth Amendment claims can arise in the context of a failure to intervene and protect an inmate from staff violence, to state such a claim an inmate

must show that "the [defendant] officer had a reasonable opportunity to intervene and simply refused to do so." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) . "However, this duty only arises if the officer has 'a realistic and reasonable opportunity to intervene.' . . . [S]uch an opportunity exists only when excessive force is used 'in his presence or otherwise within his knowledge,' Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir.1972), or if the officer saw his colleague use excessive force or had time to reach him. Putman v. Gerloff, 639 F.2d 415, 423-24 (8th Cir.1981)." Johnson v. De Prospo, No. 08-1813, 2010 WL 5466255, 4 (D.N.J. Dec. 30, 2010).  Thus, a "realistic and reasonable opportunity to intervene" typically arises only when there is a close physical or temporal proximity between the alleged abuse and the defendant, such as when the officer actually observes abuse by others.  Where, as here, this close spacial and temporal proximity is lacking, such claims fail as a matter of law.  See Ali v. McAnany, 242 F. App'x 443 (3d Cir. 2008)( dismissing failure to protect claim where there is no indication officer witnessed alleged misconduct); Morrison v. Phillips, No. 06-812, 2008 WL 4308215 (D.N.J. Sept. 16, 2008)(same).

Here, Ball's amended complaint does not allege any close physical or temporal proximity between the alleged acts of RHU staff, and the transfer requests which she later made to various supervisors.  Therefore Ball simply has not pled the type of subjective awareness of an immediate threat coupled with a realistic and reasonable

opportunity to intervene," which would support an Eighth Amendment claim on these grounds.

## C.   The Defendants Are Entitled to Qualified Immunity

Finally, even if Ball had stated a colorable claim for any actions relating to these transfer and housing decisions, the defendants are nevertheless entitled to qualified immunity from these claims for damages.  In order to establish a civil rights claim Ball must show the deprivation of a right secured by the United States Constitution or the laws of the United States.   Satisfying these elements alone, however, does not guarantee that Ball is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, —U.S.—, 129 S. Ct. 808, 815 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity:

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 129 S. Ct. at 815

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 129 S. Ct. 808; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific

conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 129 S. Ct. at 820, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id.  Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity.  Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law

for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, Ball's amended complaint alleges that the plaintiff presented to prison supervisors as a mentally ill, non-compliant prisoner who was seeking a favorable prison transfer despite her inability to consistently comply with RHU rules. On these facts, recited by Ball in her complaint, prison officials could not have anticipated that failing to give Ball something she was not legally entitled to receive–a prison transfer– would violate some "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore the defendants are entitled to qualified immunity on this claim.[3]

We recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). With respect to the defendants named in this amended complaint, in this case the Court has previously provided the plaintiff with ample opportunities to amend these pleadings, but to no avail. The

---

[3]This Court is entitled to address this qualified immunity defense *sua sponte*, when appropriate. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

current amended complaint still fails to state a viable civil rights cause of action against these defendants, and actually repeats assertions that were previously found to be legally insufficient.  Since the plaintiff has been afforded multiple opportunities to correct the deficiencies identified in his prior complaint with respect to these defendants, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the second amended complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore it is recommended that the amended complaint (Doc. 42) be dismissed as to all named defendants without further leave to amend.

Finally, while the law compels this result in this particular case, it should be noted that nothing in this ruling prevents Ball from fully addressing her grievances relating to alleged misconduct in the RHU.  Indeed, Ball has brought numerous claims directly arising out of alleged misconduct by RHU personnel, see, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver,

No. 1:11-CV-1831 (M.D.Pa.); <u>Ball v. Powley</u>, No. 1:11-CV-1832 (M..D.Pa.); <u>Ball v. Cooper</u>, No. 1:11-CV-1833 (M.D.Pa.); <u>Ball v. Famiglio</u>, No. 1:11-CV-1834 (M.D.Pa.), and this Court stands ready to fairly and impartially address each of these claims. Instead, we simply hold today that these supervisory personnel may not be held liable solely on the basis of the alleged failure to credit Ball's complaints and give her a prison transfer which she was not otherwise entitled to receive.

## IV.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss (Doc. 46) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of October, 2011.

<u>**_S/Martin C. Carlson_**</u>
Martin C. Carlson
United States Magistrate Judge